GEORGIA,
Chatham Co.
APRIL, 1809.

Ex parte
Bryan Morel.

*Minutes of Superior Court, letter G. p.* 120.

*Chambers, April* 14, 1809.

*Ex parte* BRYAN MOREL.

(Case reserved from Bryan county.)

By *Charlton,* Judge.

By the will of *John Morel, the elder,* the island of *Os-sabaw* was devised to his three sons, *Peter Henry, John,* and *Bryan,* as tenants in common, each of the said sons to have an equal part. In March, 1788, *Peter Henry Morel, John Morel,* and *Bryan Morel,* (who was then an infant,) by his guardians, *William* and *James Bryan,* applied to the Superior Court for a partition of the island, agreeably to the will of *John Morel,* the father. A writ of partition was accordingly granted, and in June, 1788, the commissioners proceeded to discharge the duties assigned them. This division ascertains three lots; and the lot No. 1, comprehends, as is designated in a chart brought into court, the tracts, Nos. 1, 2, 3, 4, 5, 6, 7, and a part of the tract No. 8. A tract called *Cabbage Garden,* 50 acres called *Horse Hammock, Bradley's Hammock,* containing 150 acres, and a hammock called *Braddock's Camp,* containing 38 acres. This lot is assigned to *John Morel.* The lot No. 2, comprehending the remainder of the tracts Nos. 8 and 9, and half the tract No. 10, is assigned as the portion of *Peter Henry Morel.* The lot No. 3, comprehending the remainder of Nos. 10, 11, 12, and including all the hammocks on the west of those numbers, is assigned to *Bryan Morel,* as his part, under the will of the ancestor, *John Morel.* This division being made, the commissioners informed us that a surplus remained, which they adjudged most beneficial to the parties, should it be enjoyed as a species of common appurtenant, but to be subject to partition whenever it

should be desired.   This surplus land is supposed, by the commissioners, to contain four thousand four hundred and sixty-six acres, and one half of an acre, of third quality land, and this is the land out of which the petitioner, *Bryan Morel*, desires to have his portion allotted to him.   In this notice, which the law directs to be given, the petitioner apprizes the other claimants that he will apply to the judge of the court for a writ of partition to divide all the undivided lands on Ossabaw, and particularly those parts of the island called the eastern division, and marked in the plat thereof, as sixteen hundred acres; also, the lands in the western division, not described as of the first and second qualities, and said, in the record of a former division, to contain four thousand four hundred and sixty-six acres and a half.

GEORGIA,
Chatham Co.
APRIL, 1809.

Ex parte
Bryan Morel.

No objections present themselves against the awarding a writ of partition to apportion and divide, amongst the several claimants, the residue of the land on Ossabaw ; but it is said by *Mitchell* and *Bulloch*, that this writ of partition cannot operate upon the lots specifically assigned by the commissioners in their partition of 1788 ; that the territory within the boundaries and lines of those lots cannot now be encroached upon, because being explicitly designated as the property of each of the heirs and unconditionally conveyed to them.

It cannot be presumed by any kind of explanation, *dehors* the partitioning record, that any land of the third quality, which is mentioned as the surplus land in the partition of 1788, and is left undivided, can be comprised within the limits of those lots, and consequently, that the surplus land must mean the surrounding domain, or all the residue of territory exclusive of these specific allotments.

On the other side, it is contended, by Messrs. *Berrien* and *Cuyler*, that explanations may be received from the commissioners of 1788, to prove that those specific allotments were only intended to designate and convey the good land or lands, of first and second quality, and that all the lands of the third quality, whether, within the limits of these allotments, or in the surrounding territory, is still to be considered as surplus lands,

31

GEORGIA,
Chatham Co.
APRIL, 1809.

Ex parte
Bryan Morel.

or of the third quality, and subject, according to the decree of the partitioners of 1788, to a division.

The proportion that the lands comprise within the specific allotments, cannot be subject to a farther division; is strongly supported by the plain terms of the partitioning record of 1788, in which the partitioners say, due respect having been had by us to the true value of all and singular the several lots and parcels of land, with the improvements and appurtenances thereunto belonging; and after due and mature deliberation and consideration being had, and upon all and singular the premises, agreeably to the power vested in us, the said several lots, tracts, and parcels of land, into such parts in the manner we adjudged most beneficial to the parties concerned, have parted and divided, and so declare and adjudge our partition and division of *all* and every the said premises into the writ hereunto annexed, mentioned to be in the manner following, that is to say, all that lot No. 1, which is assigned as the part of *John Morel*, absolutely and unconditionally.

In the same manner are the other lots assigned to *Peter Henry Morel*, and *Bryan Morel;* nothing can be collected from this deed of the partitioners, from which it can possibly be inferred that any fractions or portions of land within these lots were left undivided; on the contrary, *all* and every the *premises* are explicitly assigned by the partitioning deed, and is made final and conclusive by the judgment which incorporated it. If it conveys " *all the premises*," there can be of course no surplus: adhering, therefore, to the plain unequivocal expressions of the deed, the supposition is not warranted, that these allotments contain lands of the third quality, called surplus land, or common appurtenant, by the petitioners, and by them made subject to a farther division: all the remainders or surplus lands the partitioners decreed to be held and enjoyed as in common, meaning perhaps a pasturable common, or common appendant, and all this surplus is denominated by them, third quality land. The partitioners having already by the terms of their deed designated

the boundaries and divisions of three lots, can the term *re-*
*mainder*, upon any principles of exposition, mean a portion
of that territory of which it is said to be a remaining part?
The partitioning deed does not authorize such a solecism.

GEORGIA,
Chatham Co.
APRIL, 1809.

Ex parte.
Bryan Morel.

These are the strong grounds that have been, or may be
occupied by the counsel who rely upon the plain language of
the deed, to defeat any attempts to effect a diminution of ter-
ritory within the specific allotments by a second writ of par-
tition ; it is farther said, that if these allotments are subjected
to a partition, it would probably give a slip of land to one of
the claimants in the middle of the cultivated land or lot of one of
the others ; and hence the utmost dissatisfaction and confu-
sion would result from the smallest infringment upon the
specified limits of those allotments.

This is an argument *ab inconvenienti*, which can have no
weight in the construction of the power which must be strict-
ly construed and complied with. Partitioners are under a
*power*—they must strictly execute that power ; and when ex-
ecuted, a common law tribunal will give it a strict and rigid
construction. The counsel for the petitioner introduced
two of the partitioners of 1788 to prove, that they did not in-
tend that the limits of these allotments should exclude a fu-
ture partition of the lands of the third quality, which they
might respectively contain.

Major *Odingsell*, one of the partitioners, in the course of
his examination said, that the lots contained all the good lands,
that the good lands were of equal value, but that they also
contained lands of the third quality, subject to a future par-
tition.

Colonel *Habersham*, another witness, and one of the old
partitioners, has but a faint recollection at this distant period
of time, what was the precise intention of the partitioners,
but believes that these lots contain surplus lands of the third
quality ; he is, however, confident that the good land in each
of these lots, were so nearly of an equal value, that *John*
and *Peter H. Morel* and the persons who represented the

GEORGIA,
Chatham Co.
APRIL, 1809.

Ex parte
Bryan Morel.

minor, *Bryan Morel*, agreed that a species of lottery should decide the parts they were respectively entitled to.

This is the testimony set up, which it is contended must control the unambiguous expression of the partitioning deed and the judgment that has been founded upon it, or rather as it has been said to supply the place of a plan adverted to, by the partitioners and annexed to this deed, which, it is urged if now produced, would designate all the qualities of the lands contained within the limits of these lots, and from which, it would of course appear, that these allotments did contain lands of the third quality : but it appears to me, that this inference is not justified by the manner in which this plan is mentioned in the partitioning deed ; it is thus introduced in the following sentence of the deed, " which allotments and divisions are *marked* and *numbered* in a copy of the said plan of the island of *Ossabaw*, taken from the original, annexed to the grant thereof, which copy is hereby annexed for the benefit of the parties concerned." The only difference then between the plan annexed to the original grant, and a copy of the partitioning deed is, that the former is a general chart of the island, while the latter *numbers* the sections of the surface to which the *Morels* were entitled by the will of their father. If this copy also designated the quality of the lands, it is not said so by this deed, which plainly tells us what the nature of it was : There being no ambiguity then, on the face of the deed, the great question is, whether this court can legally permit parol explanations to destroy, what has been considered for upwards of twenty years, rights vested and secured by it.

It must be remembered, that only one of the witnesses, Major *Odingsell*, speaks with any positiveness as to the intention of the partitioners, and he occasionally displays some diffidence in the strength of his recollection. Colonel *Habersham's* testimony, as to all material points, is vague and inconclusive, it is conjectural and hypothetical. The partitioning deed is complete, it is therefore not competent for

this court or a court of equity to admit evidence to have been meant to operate otherwise than the language of the deed imports. 2 Atk. Rep. 384. 3 Atk. Rep. 3.

Deeds will stand upon a very insecure footing indeed, if their operation was to be materially changed by the admission of explanatory parol evidence. If any thing was intended to be invested which was omitted by mistake or fraud, in such cases parol evidence will be admitted, 3 Atk. 388, but in all such cases, the mistake or fraud must be deducible from the deed itself, as in the case of the Marksman, 3 Atk. 389. If the mortgage in that case had contained all the usual and necessary covenants, the chancellor would not have permitted parol evidence to be read, to show the fraud or mistake, in omitting a covenant for redemption. If parol evidence then is inadmissible to explain a deed complete and unambiguous, à fortiori, that species of evidence can never be permitted to explain a record, to explain it to have been meant otherwise than the language it imports.

The partition of 1788 has become a component part of the judgment which was entered up upon it, and is as much a record as any other part of that judgment. Speaking as an individual, I am induced to believe, from the testimony of the witness, Odingsell, that the lots contained lands of the third quality; but I cannot throw down legal principles, or shake the best established rules to suit a particular case.

The case of Moor vs. Miller, 5 Term Rep. 563, lord Kenyon was reduced to the necessity of giving up the authorities, or of hazarding his own private opinions: "Taking all the authorities together, (says his lordship,) and endeavouring to establish an uniformity of decisions, I think we are bound to determine against the devisee in this case, for whatever our conjectures may be, (and, privately speaking, I think the devisee meant to give an estate in fee to his wife,) we are not at liberty to follow those conjectures, but are compelled, by the authorities to say, that she took an estate for life under her husband's will." So in this case my conjectures are on the side of the parol evidence; but I am not

GEORGIA,
Chatham Co.
APRIL, 1809.

Ex parte
Bryan Morel.

at liberty to follow them.    This is my opinion on the partitioning record of 1788, and in awarding this writ of partition, I can only direct that it do issue, to divide the surplus lands, as mentioned in the record.    I cannot specify, as the partitioners' notice does, the division of the island in which this surplus may be found ; that must be left to the sound discretion of the partitioners, who will take care after this decision not to infringe upon the lines of the three defined allotments, *ut sit finis litium* ; for though this opinion ought to be considered as directory to the partitioners, yet it is subject, under the act of the assembly, to a revision, on the motion in bar of the partition, when this decision, as well as the judgment which may be entered up on the return of the writ, may be suspended, and the whole case, the law, the parts, and the circumstances, may pass through the ordeal of a trial, according as the act declares to be the due course of law.

Whereupon ordered, that a writ of partition do issue to divide all the surplus lands on Ossabaw, as aforesaid, directed to *Charles Odingsell, Joseph Spencer, Lee Blacksell, Archibald S. Bulloch, Thomas Bourke, Benjamin Wall, James Johnston, Joseph Miller, D. E. Adams, John Eppinger*, and *Joseph Stultz*, or a majority of them : And it is ordered, that the oath required by law be administered by *Henry Austin*, Esq. of Bryan county.

*Berrien* and *Cuyler*, for petitioner.
*Mitchell* and *Bulloch*, for *P. H. & J. Morel.*